## Case No. 16,336.

### UNITED STATES v. SMITH.

[19 Law Rep. 91.]

District Court, D. Massachusetts. March, 1856.

PERJURY—FISHING BOUNTY LAWS.

To constitute the offence of false swearing under the act of 1813 [3 Stat. 51], for the payment of fishing bounty, there must be a wilful and corrupt intent to swear falsely.

[Cited in U. S. v. Moore, Case No. 15,803.]

This was an indictment [against David A. Smith] for perjury in making a false declaration to obtain the bounty on a fishing schooner, called the East Wind, of Provincetown. The act of 1813 allows a bounty to vessels that have been employed in the cod fishery not less than four months at sea, provided they shall have been employed under an agreement with the fishermen on shares. The act declares that "any person who shall make any false declaration in any oath, or affirmation required by this act, being duly convicted thereof, shall be deemed guilty of wilful and corrupt perjury, and be punished accordingly."

In order to procure the bounty, the law requires that the owner of the fishing vessel, his agent or representative, shall produce to the collector the original agreement with the fishermen employed during the fishing season, which shall provide that the fish or their proceeds shall be divided among the fishermen, in proportion to the fish they may respectively have caught, and to the truth of which he shall swear or affirm.

It was proved at the trial, that Paul Atkins, the managing owner of the East Wind, which had been employed four months in the cod fishery, gave powers of attorney to the defendant, D. A. Smith, to procure the fishing bounty of the collector, S. B. Phinney, at Barnstable. The defendant at the same time took the papers and powers of attorney for other vessels, about thirty in number, belonging to Provincetown, for which he engaged to collect the bounty, and for each of which he was to be paid fifty cents. He was a county commissioner at the time, and was going from Provincetown to Barnstable on business. Mr. Smith produced to Collector Phinney, the fishing agreement of the owners and skipper of the East Wind, which was in legal form, signed by the master and crew, and purporting to be on shares, according to law. To the truth of this agreement he took and subscribed the following oath before Collector Phinney: "I solemnly swear that the paper now produced by me to the collector, is the original agreement between the owners, master and fishermen, of the schooner East Wind, for, and during the last fishing season." The oath was administered December 31, 1855, and thereupon the collector paid the bounty to Mr. Smith. The government produced three of the fishermen engaged in the vessel, two of whom testified that they were hired by the thousand, that is, so much for every thousand fish they caught, and the other that he was hired by the season, for $125. The agreement was made with the master. They were to have no part of the bounty, five-eighths of which by law belong to the fishermen, and three eighths to the vessel. They all signed the regular shipping paper, which was printed, to go on shares, but the actual agreement was as above stated. There was no evidence to contradict this, and it was admitted that the oath taken by the defendant, was not true in point of fact. But the counsel for the defendant argued to the jury that the defendant took the oath innocently and in good faith; that he had no personal knowledge whether the paper he swore to was true or false; that it was customary for persons who had no personal knowledge of the facts, but who had received the papers as genuine, and found them correct in form, to take such oaths at the request of the owners who sent their papers by them to obtain the bounty, and that as there was no wilful and corrupt intent on the part of the defendant to swear falsely, he was not guilty of "wilful and corrupt perjury."

The United States attorney argued that the perjury consisted in the false declaration, that the paper produced was the true agreement, when it was not the agreement, and also in the defendant's positively swearing that it was the true agreement, when he knew that he had no knowledge whatever of the fact he swore to. That by such swearing he induced the collector to pay the bounty, who had testified that he could not have paid the bounty under his instructions from the treasury department, and should not have paid it, if he had known that the fishermen were not employed on shares, and that he relied on the oath of the defendant for the truth of the agreement, to which he there positively swore. The attorney requested the court to instruct the jury that if the defendant, Smith, when he positively swore that the paper produced by him was the original agreement, had no knowledge that it was the agreement, and knew that he had no knowledge of the fact to which he made oath, then he knowingly and wilfully swore to a false declaration. And to this

point, he cited 1 Hawk. P. C. c. 69, § 6; 2 Russ. Crimes; and 3 Greenl. Ev.—"that it is perjury if one wilfully swears that he knows a thing to be true, which at the same time he knows nothing of, and impudently endeavors to induce those before whom he swears, to proceed upon the credit of a deposition which any stranger might make as well as he."

B. F. Hallett, U. S. Dist. Atty.

T. K. Lothrop, for defendant.

SPRAGUE, District Judge, instructed the jury that the law did not allow the fishing bounty, unless by the agreement under which the voyage was performed, the fishermen were severally to share in the bounty and proceeds of the voyage. That engaging men for so much a thousand fish caught, or hiring them by the month or season, except the cook, was not a compliance with the requisitions of the law, and no vessel was entitled to bounty, where the fishermen did not have a share in the residue of the proceeds of the voyage, in proportion to the number of fish caught. The law made it necessary, in order to obtain the bounty, that, after certain deductions from the proceeds of the fish caught, the residue should be divided among the fishermen, according to the number of fish they caught, and that five-eighths of the bounty should be divided in the same proportion. And the owner, his agent, or representative, must swear that such was the agreement, in order to get the bounty. But in order to make the offence perjury, under the statute, the jury must be satisfied that the defendant swore to a declaration, which at the time he was aware was false. To constitute the offence, it must be proved, that, in taking the oath, the defendant knowingly swore to a declaration as a fact, which he was aware was untrue. And that might be either by swearing to a fact which he knew was not true, or by swearing to his knowledge of the fact, when he knew he had no such knowledge. Rash swearing was not necessarily perjury, and the jury would inquire whether it was honestly done, or to deceive the officer and get the bounty by making a false declaration. The jury would inquire what reason the defendant had for believing that the oath he took was true. He had no participation in the voyage, and no interest in swearing falsely to get the bounty. Was the paper put into his hands as an original document, and did he receive it as such? It is in the usual form, and purported to be a genuine document. It had the genuine signatures of the master and all the fishermen, and was countersigned by the owner of the vessel. It had also the certificate of the inspector, at Provincetown, who examined the vessel before she went on her voyage, and the oath of the master of the vessel before the deputy collector, on her return, that it was the actual agreement for the voyage. Taking the position in which

the defendant stood, did he honestly and in good faith take the oath, or did he wilfully swear that he had knowledge of that which he was conscious at the time he had no knowledge of?

The jury retired, and after being out a few hours, came into court and requested instruction, whether the oath must be taken wilfully and with intent to defraud?

THE COURT said: "It is necessary for the jury to be satisfied beyond a reasonable doubt, that the oath was taken wilfully and intentionally to deceive, or mislead, and that the defendant stated as true, what he knew to be false. If he had no intentions of stating a falsehood to mislead, it is not the offence charged in the indictment, there being no collusion with any officer. That it was not necessary that the defendant should have intended to defraud the government, by obtaining the bounty for a vessel which he did not think had earned it. He might believe that the vessel had been employed the full time, with the requisite crew under the proper agreement, and so was entitled to the bounty, and yet he might, under the statute, be guilty of the offence charged by swearing falsely, to induce the collector to pay the bounty."

Under this instruction the jury retired, and returned a verdict of "not guilty."